# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00446-COA

**ANTONIO VASHON SMITH A/K/A ANTONIO V. SMITH A/K/A ANTONIO SMITH**                      APPELLANT

**v.**

**STATE OF MISSISSIPPI**                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED – 11/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.

### JAMES, J., FOR THE COURT:

¶1. Antonio Vashon Smith appeals the dismissal of his postconviction-relief (PCR) motion by the Clarke County Circuit Court. Finding no error, we affirm the circuit court's judgment of dismissal.

### FACTS AND PROCEDURAL HISTORY

¶2. On February 22, 2006, Smith was indicted on one count of sexual battery, in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), and one count of fondling, in violation of Mississippi Code Annotated section 97-5-23(1) (Rev. 2014). On July 19,

2006, Smith filed a petition to enter a plea of guilty to the fondling charge, but maintained his innocence under *North Carolina v. Alford,* 400 U.S. 25 (1970). As part of the plea agreement, the sexual-battery count was dismissed. The same day, the circuit court conducted a plea hearing and accepted Smith's guilty plea. The circuit court accepted the recommendation of the State and sentenced Smith to ten years, with all ten years suspended and five years of supervised probation. Smith was given credit for five days of pretrial incarceration and was ordered to pay a total of $1,269.50 in court assessments as well as a probation-supervision fee at the rate of $45 per month.

¶3. On March 29, 2007, Smith's probation officer filed an affidavit stating that Smith violated his probation for failing to register as a sex offender. After being continued, a revocation hearing was held in circuit court on August 29, 2007. Smith was represented again by his trial counsel at the hearing. Smith's probation officer testified that Smith was scheduled to reregister on February 5, 2007, and as of March 6, 2007, the date of his arrest, he had not reregistered. Smith admitted that he failed to reregister as a sex offender and that he knew it was a violation of his probation. Smith testified that he failed to register because it "slipped my mind." The circuit court revoked Smith's probation and ordered Smith to serve one year in the custody of the Mississippi Department of Corrections (MDOC). Smith was given credit for 182 days of pretrial incarceration. The order revoking probation stated: "If [Smith] fails to strictly abide by [the] probation terms[,] then he will be subject to revocation of the remaining Nine (9) years of his original Ten (10) year sentence." The order also provided that Smith's probation would end in July 2011. The State chose not to pursue

2

Smith's failure to register as a separate crime.

¶4. On August 6, 2009, Smith's probation officer filed a petition to revoke Smith's probation because Smith failed to register as a sex offender on two occasions. The petition provided that despite Smith being warned twice not to let his sex-offender registration expire, it expired in April 2009 and August 2009. The petition also stated that Smith failed to pay court assessments of $1,269.50 and supervision fees, which were $551 in arrears.

¶5. On September 1, 2009, the circuit court held a revocation hearing. Smith was not represented by counsel at the hearing. Smith informed the court that he violated the terms of probation because he "went through a lot." Specifically, he claimed he was depressed, did not have transportation, had a suspended license, and could not find employment. After hearing testimony from Smith's probation officer and arguments from Smith, the circuit court found that Smith had violated each of the conditions identified by his probation officer. The circuit court revoked Smith's probation, and ordered him to serve the remaining balance of his suspended sentence in the custody of MDOC, with credit given for twenty-three days of pretrial incarceration.

¶6. On December 18, 2012, Smith filed a PCR motion alleging various grounds for relief. On February 26, 2013, the circuit court entered an opinion and order summarily dismissing Smith's PCR motion. The circuit court found that Smith's PCR motion alleged an exception to the three-year statute of limitations under Mississippi Code Annotated section 99-39-5(2)(b) (Rev. 2015). The circuit court found that "excepted from this three-year statute of limitations 'are those cases in which the [movant] claims that his sentence has expired or his

probation, parole or conditional release has been unlawfully revoked[.]'" For that reason, the circuit court addressed the merits of Smith's claims and found each one to be meritless.

¶7. On appeal, Smith raises the following issues: (1) whether the second revocation hearing subjected him to double jeopardy; (2) whether he was entitled to an evidentiary hearing; (3) whether he was denied effective assistance of counsel. Smith also attacked the voluntariness of his plea, which the circuit court addressed, as will this Court. Finding no error, we affirm the circuit court's dismissal of Smith's PCR motion.

## STANDARD OF REVIEW

¶8. When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's factual findings if they are clearly erroneous. *Rowland v. State*, 42 So. 3d 503, 506 (¶8) (Miss. 2010). Questions of law are reviewed de novo. *Id.* Mississippi Code Annotated section 99-39-11(2) (Rev. 2015) states: "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified." "This Court will affirm the summary dismissal of a PCR motion if the movant fails to demonstrate a claim procedurally alive substantially showing the denial of a state or federal right." *Dickens v. State*, 119 So. 3d at 1141, 1143-44 (¶6) (Miss. Ct. App. 2013) (quoting *Robinson v. State*, 19 So. 3d 140, 142 (¶ 6) (Miss. Ct. App. 2009)).

## DISCUSSION

I. **Whether Smith was subjected to double jeopardy.**

¶9. Smith argues that he is denied due process and fundamental fairness because he was

4

subjected to double jeopardy when the circuit court revoked his probation for a second time and reinstated the remaining balance of his originally suspended ten-year sentence. We will address the merits of Smith's claim because he argues that his probation was unlawfully revoked, which is an exception to the three-year statute of limitations for filing a PCR motion under section 99-39-5(2)(b).

¶10.    "It is well settled in Mississippi that courts have the authority to reinstate any sentence that was previously suspended." *Edwards v. State*, 123 So. 3d 936, 938 (¶6) (Miss. Ct. App. 2013) (citing *Pruitt v. State*, 953 So. 2d 302, 305 (¶8) (Miss. Ct. App. 2002)). Mississippi Code Annotated section 47-7-37(5)(a) (Rev. 2015) provides in pertinent part:

> The probation and parole officer after making an arrest shall present to the detaining authorities a similar statement of the circumstances of violation. The probation and parole officer shall at once notify the court of the arrest and detention of the probationer and shall submit a report in writing showing in what manner the probationer has violated the conditions of probation. Within twenty-one (21) days of arrest and detention by warrant as herein provided, *the court shall cause the probationer to be brought before it and may continue or revoke all or any part of the probation or the suspension of sentence.*

*Id.* (emphasis added).

¶11.    Smith failed to abide by a condition of his probation by failing to register. Upon revocation, a portion of his suspended sentence was reinstated. Following his release from incarceration, while Smith was on probation, Smith again failed to abide by the conditions of his probation. For that reason, the circuit court revoked Smith's probation. The circuit court ordered Smith to be reincarcerated for the remaining balance of his suspended sentence as authorized by section 47-7-37(5)(a). The circuit court was vested with discretion to revoke and reinstate the remaining portion of Smith's suspended sentence. *Agent v. State*,

5

30 So. 3d 370, 374 (¶11) (Miss. Ct. App. 2010) (holding that the trial judge has the discretion to impose a lesser sentence, but also has the authority to reinstate the entire sentence under section 47-7-37). The circuit court did not resentence Smith, nor did it lengthen his original sentence upon the second revocation. Instead, the circuit court reinstated the remaining balance of the suspended portion of his sentence. Accordingly, this issue is without merit.

## II. Whether Smith was entitled to an evidentiary hearing.

¶12. Smith argues that he was denied due process and fundamental fairness because he was denied an evidentiary hearing on his PCR motion. In support of this argument, Smith claims that (1) he was not informed that his sentence would be served day-for-day; (2) his probation officer told him at the hearing that he would speak up for him at the hearing, but did not; and (3) the circuit court erred in concluding that he did not pay any of his fines and fees. We disagree.

¶13. The circuit court may dismiss a PCR motion, without having held an evidentiary hearing, when it is clear that the movant is not entitled to relief under the Uniform Post-Conviction Collateral Relief Act (UPCCRA). *State v. Santiago*, 773 So. 2d 921, 923-24 (¶11) (Miss. 2000). "A [circuit court] enjoys wide discretion in determining whether to grant an evidentiary hearing." *Williams v. State*, 4 So. 3d 388, 392 (¶11) (Miss. Ct. App. 2009) (citing *Hebert v. State*, 864 So. 2d 1041, 1045 (¶11) (Miss. Ct. App. 2004)). "A post-conviction claim for relief is properly dismissed without the benefit of an evidentiary hearing where it is manifestly without merit." *Id.* (citing *Holland v. State*, 956 So. 2d 322, 326 (¶7) (Miss. Ct. App. 2007)).

6

¶14. "[T]o be entitled to an evidentiary hearing, a [movant] must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact that, if concluded favorably to the petitioner, would warrant relief." *Hamilton v. State*, 44 So. 3d 1060, 1067 (¶21) (Miss. Ct. App. 2010) (quoting *McCuiston v. State*, 758 So. 2d 1082, 1085 (¶9) (Miss. Ct. App. 2000)). "Mere allegations in the pleadings themselves, otherwise unsupported, are not sufficient to require a hearing." *McCuiston*, 758 So. 2d at 1085-86 (¶9) (citing *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)). "Claims by the [movant], even if supported by affidavit, that are contradicted by the record of the plea acceptance hearing may be disregarded by the [circuit] court*." Id.* at 1086 (¶9) (citing *Taylor v. State*, 682 So. 2d 359, 363 (Miss. 1996)).

¶15. Each of Smith's arguments is manifestly without merit. Smith's argument that he was not informed any potential sentence could be day-for-day if his probation was revoked is contradicted by the record. The record shows that he was given an *estimate* on the amount of time he could serve. Moreover, he was aware that any violation, no matter how slight, could potentially result in revocation of his entire suspended sentence. The argument that the circuit court erred by finding that Smith had not paid any fines and fees is in direct conflict with the record. At the second revocation hearing, an affidavit from the circuit clerk's office was introduced into evidence, confirming that Smith had made no payments, with the entire balance of $1269 owed for court assessments. Moreover, Smith's probation officer testified that Smith was $551 in arrears for supervision fees.

¶16. Smith argues that his probation officer informed him he did not need an attorney and that he would "speak up for him" at the hearing. However, the probation officer's petition

7

and affidavit sought revocation. The probation officer testified and again confirmed that he was requesting revocation. Smith was given an opportunity to cross-examine his probation officer. What is more, Smith was provided written notice of his revocation hearing, which expressly stated that he had the opportunity to make arrangements to hire an attorney. The record does not indicate that Smith even requested an attorney. Regardless, a probation officer is not an attorney, and any alleged reliance on him is misplaced. *See Agent*, 30 So. 3d at 373-74 (¶9) (holding that an ineffective-assistance claim would not be applicable to a defendant's probation officer because a probation officer does not hold the same position as legal counsel with respect to a defendant).

¶17. Smith offered no affidavit, other than his own, in support of his claims. Moreover, his claims are either unsupported or contradicted by the record. Accordingly, we find that the circuit court did not err by dismissing Smith's PCR motion without an evidentiary hearing.

### III. Whether Smith received ineffective assistance at sentencing and during his first revocation hearing.

¶18. Smith argues he was denied effective assistance of counsel at sentencing and during his first revocation hearing. A PCR motion following a guilty plea is untimely unless it is filed within three years after entry of the judgment of conviction. *Smith v. State*, 118 So. 3d 180, 182 (¶7) (Miss. Ct. App. 2013) (citing *Watts v. State*, 97 So. 3d 722, 725 (¶7) (Miss. Ct. App. 2012) (citing Miss. Code Ann. § 99-39-5(2)). "The Mississippi Supreme Court has consistently held that the UPCCRA's procedural bars apply to [PCR] claims based on ineffective assistance of counsel." *Williams v. State*, 110 So. 3d 840, 844 (¶21) (Miss. Ct.

8

App. 2013) (citing *Crosby v. State*, 16 So. 3d 74, 78 (¶8) (Miss. Ct. App. 2009) (quoting *Chancy v. State*, 938 So. 2d 267, 270 (¶11) (Miss. Ct. App. 2005))). Therefore, Smith's ineffective-assistance claim is time-barred. Notwithstanding the time-bar, we also find that Smith's claims are meritless.

¶19. In order to demonstrate ineffective assistance of counsel, Smith must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Under *Strickland*, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance." *Willis v. State*, 66 So. 3d 740, 745 (¶21) (Miss. Ct. App. 2011) (citing *Strickland*, 466 U.S. at 689). "In the context of guilty pleas, this means the defendant must show that, were it not for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009). "Furthermore, a defendant must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own." *McBride v. State*, 108 So. 3d 977, 980 (¶11) (Miss. Ct. App. 2012) (citing *Robertson v. State*, 669 So. 2d 11, 13 (Miss. 1996)).

¶20. Smith does not assert in his brief that but for his attorney's alleged misrepresentation, he would have insisted on proceeding to trial rather than enter his guilty plea, which alone is fatal to his claim. *See Burrough*, 9 So. 3d at 375 (¶22). Thus, we cannot be sure that he would have insisted on going to trial when he does not even claim that he would have, by affidavit or otherwise. Nonetheless, we will address Smith's arguments in support of his

9

ineffective-assistance-of-counsel claim.

¶21. Smith argues that his counsel was ineffective by not challenging the allegations of the sexual-battery charge. Smith claims that the allegations of sexual battery are completely unfounded, that the sheriff's office abandoned those allegations, and they were only used to force a plea to the fondling count. Smith submitted an affidavit claiming that "the charge of fondling was for the purpose of my wife getting a divorce."

¶22. It is obvious that Smith's counsel challenged the allegations of the sexual-battery charge because this charge was dismissed based on Smith's guilty plea to the fondling charge according to the terms of the plea agreement entered by the State and Smith. In exchange for the guilty plea, the State recommended that Smith's entire ten-year sentence would be suspended, and he would be placed on probation for five years and ordered to pay certain costs and fines. We agree with the circuit court's finding that "[a]ny allegations [Smith] presented concerning counsel's failure to expose the fabrication of either charge, is undermined by the State's proffer of evidence during the plea hearing."

¶23. Smith argues that his counsel was ineffective at his first revocation hearing for failing to argue that, under Mississippi Code Annotated section 45-33-33(4) (Rev. 2015), an individual may, but is not required to, be arrested for the first violation of his duty to register as a sex offender. However, Smith's counsel raised this very argument at the revocation hearing by asserting that some tolerance is built into section 45-33-33(4), because the first failure to register may result in arrest, but subsequent failures shall result in arrest. Smith claims that his arrest following his first failure to register is a violation of his due-process and

10

equal-protection rights. Smith was not indicted for the separate crime of failing to register following his first violation and does not explain how this arrest violated his due-process and equal-protection rights. Moreover, counsel presented mitigating testimony, and the circuit court only imposed one year of his ten-year suspended sentenced following the first revocation. This argument is without merit.

¶24. Smith argues that his counsel was ineffective at sentencing and during the first revocation hearing because he failed to advise him that if his probation was revoked, his sentence would be served day-for-day. However, this argument is in direct conflict with the record.

¶25. Smith's plea petition stated: "I further understand that my attorney may have made an *estimation* to me of whether I might be released on parole, house arrest[,] or any other form of early release, but whether said release is granted is entirely up to the Parole Board or the [MDOC]." The following exchange at Smith's plea hearing occurred:

> The Court: . . . [I]f I accept the recommendation, you are going to initially remain out, all right, but you will be on either post-release supervision or probation. You understand that [the probation officer] here is going to explain all of that supervision responsibility to you. If you violate the terms of that supervision, then you are subject to having confinement time up to the amount that we've discussed in your particular case, and how long exactly you have to serve in confinement is going to be subject to the rules and regulations within the sentencing order guidelines of what the Department of Corrections says in your case. [Your attorney] explained all of that to . . . you?
>
> Smith: Yes, sir.
>
> . . . .

11

The Court:    Make sure now . . . you that are going to remain out, that you don't leave here without understanding clearly what your responsibilities are with the supervision. Because if you fail to meet those terms, you are subject to being arrested, confined, and you will serve the sentence up to what we discussed in each of your cases. Clear [with] that Mr. Smith?

Smith:    Yes, sir.

¶26. Smith was issued a copy of the sentencing order, which stated the failure to abide by any condition of probation was sufficient to revoke the suspended portion of his sentence for even the slightest violation. Smith then provided the following sworn acknowledgment:

> I, the Defendant in this cause, acknowledge that this is my bargain, and I reaffirm that the information I have given to the Court is true and correct and that I fully understand the terms and conditions of this Order. I understand that Probation is a privilege and not a right and that the Court may revoke my probation for any violation of the conditions of this Order, however slight or serious it may be.

¶27. Based on the record before us, Smith cannot genuinely say that he did not realize that any sentence upon revocation could potentially be day-for-day. Smith failed to offer any affidavit, other than his own, in support of his ineffective-assistance-of-counsel claim. *See Bell v. State*, 117 So. 3d 661, 664 (¶10) (Miss. Ct. App. 2013) ("In PCR cases, where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit."). Moreover, Smith stated in his sworn plea petition that he believed his lawyer "has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given." Again, during the plea colloquy, Smith represented to the circuit court that he was satisfied with the assistance of his counsel. For these reasons, Smith's ineffective-assistance-of-counsel claim is without merit.

12

### IV.    Whether Smith was denied due process and unconstitutionally denied his right to counsel at his second revocation hearing.

¶28.    Smith argues that he was denied due process and the right to counsel at his second revocation hearing.  An exception to the three-year statute of limitations for filing a PCR motion exists when the movant's probation has been unlawfully revoked.  Miss. Code Ann. § 99-39-5(2)(b).  The minimum due-process requirements for revocation hearings include:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Jones v. State*, 70 So. 3d 255, 260 (¶16) (Miss. Ct. App. 2011) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972))).  We agree with the circuit court's finding that all of the due-process requirements were satisfied and Smith was adequately afforded due process of law.

¶29.    Smith argues that he was unconstitutionally denied the right to counsel at his second revocation hearing because "it is a high probability" that if he had the benefit of counsel, his probation would not have been revoked and he would not have been ordered to serve the balance of his suspended sentence.

¶30.    "It is well established in Mississippi that there is no per se right to counsel at revocation hearings."  *Pruitt*, 953 So. 2d at 305 (¶9) (citing *Riely v. State*, 562 So. 2d 1206, 1209 (Miss. 1990) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26 (1981))).

"However, when the issues relevant to the hearing are complex or difficult to develop, the court should appoint counsel for the defendant." *Smith v. State*, 94 So. 3d 335, 341 (¶18) (Miss. Ct. App. 2011). "[T]he presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings[.]" *Pruitt*, 953 So. 2d at 305 (¶9) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)).

¶31. The circuit court stated that "[Smith's] revocation simply hinged on whether he violated the terms of his probation by failing to register as a sex offender and failing to pay his supervision fees and court assessments." So the issues before the circuit court were not complex or otherwise difficult to develop. Smith, who had attended two years of college, was afforded a hearing before the circuit court where he was allowed to cross-examine his probation officer. Smith was also allowed to present evidence, testify, and make any statement to the circuit court as to why his probation should not be revoked. It was undisputed that Smith failed to register on two occasions, and that alone was sufficient to revoke his probation. *See Bell*, 117 So. 3d at 664 (¶15) ("Under Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation.").

¶32. The circuit court found that "[a]fter imposing one year of [Smith's] suspended sentence in his first revocation and then coming before the court on a second revocation for, among other things, failing to register again, the [circuit court] disagrees with [Smith's] contention that there is a high probability that if [Smith] had the benefit of counsel [his probation] would not have been revoked."

14

¶33. We agree with the circuit court that Smith was not unconstitutionally denied the right to counsel at his second revocation hearing.

> **V. Whether Smith's plea was freely, voluntary, and intelligently entered.**

¶34. Although not specifically designated as an assignment of error, Smith attacks the voluntariness of his plea. Smith advances the same arguments previously stated in support of this contention.

¶35. We find that Smith's claim that his plea was involuntary is time-barred, as it was filed outside of the three-year statute of limitations imposed by Mississippi Code Annotated section 99-39-5(2). The time-bar includes a movant's PCR claim based on the involuntariness of a guilty plea. *Kirk v. State*, 798 So. 2d 345, 346 (¶6) (Miss. 2000). Errors affecting fundamental constitutional rights are excepted from the procedural bars. *Rowland*, 42 So. 3d at 507 (¶12). However, "the mere assertion of a constitutional right violation is not sufficient to overcome the time bar." *Stovall v. State*, 873 So. 2d 1056, 1058 (¶7) (Miss. Ct. App. 2004). Smith filed his PCR motion over three years after entering his guilty plea. Accordingly, any attack on the voluntariness of his plea is time-barred. Notwithstanding the time-bar, the claim is without merit.

¶36. "A guilty plea will be found valid if it is shown to have been voluntarily and intelligently made by the criminal defendant before the trial court." *Burrough*, 9 So. 3d at 373 (¶11) (citing *King v. State*, 738 So. 2d 240, 241 (¶¶2-3) (Miss. 1999)). "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of

15

the plea." *Id*. (citing *Harris v. State*, 806 So. 2d 1127, 1130 (¶9) (Miss. 2002)). "The PCR movant has the burden to show by a preponderance of the evidence that his plea was involuntary." *Woods v. State*, 71 So. 3d 1241, 1244 (¶8) (Miss. Ct. App. 2011) (citing *Sayles v. State*, 35 So.3d 567, 569 (¶7) (Miss. Ct. App. 2010)).

¶37.    Smith's assertions are completely contradicted by the record. His plea petition stated:

> After consulting with my lawyer, I am entering my plea of "GUILTY" freely and voluntarily and of my own accord and with full understanding of all matters set forth in the indictment and in this petition and in the certificate of my lawyer which follows.

¶38.    Under *Alford*, an individual accused of a crime may voluntarily, knowingly, and understandably consent to a prison sentence even if he is unwilling or unable to admit his participation in the alleged acts. *Cole v. State*, 918 So. 2d 890, 892-893 (¶4) (Miss. Ct. App. 2006) (citing *Alford*, 400 U.S. 25). His plea petition also stated:

> I plead "GUILTY" and request the Court to accept my plea of "GUILTY" and to have entered my plea of "GUILTY" . . . . ALTHOUGH I MAINTAIN THAT I AM INNOCENT UNDER *ALFORD V. NORTH CAROLINA*, I AM AWARE OF THE EVIDENCE THE STATE WOULD ADMIT IF I WENT TO TRIAL AND FEEL THAT A STRONG LIKELIHOOD EXISTS THAT I WOULD BE FOUND GUILTY OF THIS CHARGE IF I WENT TO TRIAL BEFORE A JURY, SO I AM ACCEPTING THE PLEA BARGAIN OFFERED.

¶39.    Smith unequivocally acknowledged his understanding of the *Alford* plea and its consequences during the plea colloquy. He also confirmed that his attorney was not "making" him submit a guilty plea on the fondling charge. The prosecutor presented the facts that he was prepared to prove at trial on the fondling charge. Smith confirmed that he understood what the State was prepared to prove and still wished to go forward with his

guilty plea. Smith stated that after discussing the matter in detail, he was entering his guilty plea freely and voluntarily. Based on Smith's statements made under oath, we find that Smith's plea was entered freely and voluntarily. *See King v. State*, 679 So. 2d 208, 211 (Miss. 1996) (recognizing that there is a strong presumption of validity when a statement is given while under oath).

¶40. We agree with the circuit court's finding that Smith's plea was freely, voluntarily, and intelligently entered.

## CONCLUSION

¶41. For these reasons, the judgment of the circuit court dismissing Smith's PCR motion is affirmed.

¶42. **THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY DISMISSING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**